# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KERMITT LATTIMORE and ) <br> CAROL G. HUTTON-LATTIMORE, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> VILLAGE OF STREAMWOOD, et al., ) <br> ) <br> Defendants. ) | Case No. 17 C 8683 <br><br> Judge Amy St. Eve |

## ORDER

The Court grants in part with prejudice, grants in part without prejudice, and denies Defendants' motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). [26]. The Court grants Plaintiffs leave to file an Amended Complaint in accordance with this ruling by no later than June 8, 2018. Status hearing set for May 31, 2018 is stricken and reset to June 13, 2018 at 8:30 a.m.

## STATEMENT

On November 30, 2017, Plaintiffs Kermit Lattimore and Carol G. Hutton-Lattimore filed the present seven-count Complaint against Defendant Village of Streamwood ("Streamwood") and certain Streamwood police officers bringing constitutional claims, along with state law claims, pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' Rule 12(b)(6) motion to dismiss. For the following reasons, the Court grants Defendants' motion to dismiss Plaintiffs' state law claims as alleged in Counts V and VI of the Complaint with prejudice. The Court denies Defendants' motion to dismiss Plaintiffs' Fourth Amendment federal malicious prosecution claim as alleged in Count II. Last, the Court grants in part without prejudice the remainder of Defendants' motion.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014); *see also Hill v. Serv. Emp. Int'l Union,* 850 F.3d 861, 863 (7th Cir. 2017). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to the federal pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570).

When determining the sufficiency of a complaint under the plausibility standard, courts accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff's favor. *See Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017). Moreover, a "limitations defense is not often resolved on a Rule 12(b)(6) motion because 'a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.'" *Amin Ijbara Equity Corp. v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (citation omitted). Nevertheless, "dismissal at this early stage is appropriate when the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Id*.; *see also Collins v. Vill. of Palatine, Ill.,* 875 F.3d 839, 842 (7th Cir. 2017) ("Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely.").

## BACKGROUND

Plaintiff Kermit Lattimore ("Lattimore") and Maribeth Rivera ("Rivera") were married and began living together at their Streamwood residence ("Residence"), which was a pre-marital asset owned by Lattimore. (R. 1, Compl. ¶ 1.) Plaintiff Carol G. Hutton-Lattimore ("Hutton-Lattimore") is Lattimore's daughter, who lived at the Residence. (*Id*. ¶ 2.) Eventually Lattimore's and Rivera's marriage became troubled resulting in Lattimore filing a petition for dissolution of the union. (*Id.* ¶ 3.)

On January 26, 2015, Lattimore returned to the Residence with his nephew Steven and Hutton-Lattimore. (*Id.* ¶ 4.) Plaintiffs allege that at that time Rivera had locked Lattimore out of the Residence. (*Id.* ¶ 5.) Once they gained entry into the Residence, Rivera's son, Michael, assaulted Lattimore with a knife. (*Id.* ¶¶ 6, 7.) Thereafter, Lattimore dialed 911 to request police assistance. (*Id.* ¶ 9.) Defendant Officers Steinmetz and Van Der Linden responded to the 911 call, knowing that Lattimore had made the call and was seeking assistance. (*Id*. ¶¶ 10, 11.) Plaintiffs further allege that Defendant Officers Steinmetz and Van Der Linden had heard the recorded 911 audio of Michael threatening Lattimore. (*Id*. ¶ 12.)

Shortly thereafter, Defendant Officers Stoiber, McPherson, and Klein arrived to assist Defendant Officers Steinmetz and Van Der Linden at the Residence. (*Id.* ¶ 13.) Defendant Officers Steinmetz, Van Der Linden, Stoiber, McPherson, and Klein (the "Responding Officers") entered the Residence and interviewed the occupants therein. (*Id*. ¶ 14.) According to Plaintiffs, the Responding Officers knew the occupants at the Residence and had no authority to remove Lattimore, his nephew Steven, or Hutton-Lattimore from the Residence. (*Id.* ¶ 15.) As to Hutton-Lattimore, the Responding Officers found her in the kitchen on January 26, 2015, and also knew that at that time knew she had not committed a crime and that she was not a threat to the occupants of the Residence. (*Id*. ¶¶ 16-18.) Nonetheless, on January 28, 2015, Streamwood police officers arrested Hutton-Lattimore and charged her with home invasion. (*Id.* ¶ 31.)

As to Lattimore, once the Responding Officers arrived on January 26, 2015, they seized Lattimore's lawfully owned gun and escorted him out of the Residence. (*Id.* ¶¶ 20-22.) Once

outside the Residence, the Responding Officers searched Lattimore's car to recover his wallet and then towed the vehicle. (*Id*. ¶¶ 23-26.) The Responding Officers thereafter arrested Lattimore and charged him with unlawful use/possession of a weapon and home invasion despite Lattimore's valid firearm credentials and documents. (*Id*. ¶¶ 27, 28.) Plaintiffs further allege that Defendant Officer Klein submitted a complaint for a search warrant to search Lattimore's property that stated Lattimore's concealed carry license and FOID cards had been revoked – although they were in fact valid. (*Id*. ¶¶ 29, 33.) Moreover, Plaintiffs allege that Defendant Officers Gallagher, Barnes, and Zeigler assisted in the arrest, as well as investigated the home invasion charges against Lattimore and Hutton-Lattimore. (*Id*. ¶ 32.) On December 2, 2015, after a jury trial, the jury acquitted Lattimore of the home invasion charges. (*Id*. ¶ 34.) Lattimore's unlawful use of a weapon charges had been dropped before trial. (*Id*. ¶ 36.) The charges against Hutton-Lattimore were dropped on January 6, 2016. (*Id*. ¶ 35.)

Based on these allegations, Plaintiffs bring the following claims: (1) a Fourth Amendment false arrest claim (Count I); (2) a Fourth Amendment malicious prosecution claim (Count II); (3) a Fourteenth Amendment due process fabricated evidence claim (Count III); (4) a constitutional conspiracy claim under 42 U.S.C. § 1983 (Count IV); (5) an Illinois common law malicious prosecution claim (Count V); (6) an Illinois common law intentional/negligent infliction of emotional distress claim (Count VI); and (7) an indemnification claim under 745 ILCS 10/9-102 (Count VII).

**ANALYSIS**

I. **State Law Claims**

   A. **Malicious Prosecution**

In Count V of the Complaint, Plaintiffs allege a state law claim of malicious prosecution. In the present motion to dismiss, Defendants argue that Plaintiffs' claim is untimely under the one-year limitations period pursuant to Section 8-101(a) of the Illinois Local Government and Governmental Employees Tort Immunity Act. Section 8-101(a) states that "[n]o civil action ... may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a).

Plaintiffs' state law malicious prosecution claims accrued at the time the criminal proceedings at issue were terminated in Plaintiffs' favor. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (Ill. 2004); *Simon v. Northwestern Univ.,* 183 F. Supp. 3d 908, 920 (N.D. Ill. 2016). In their Complaint, Plaintiffs allege that Lattimore was acquitted on December 2, 2015, and thus he had one-year from that date to file the present Complaint, namely, December 2, 2016. Instead, Plaintiffs filed their Complaint on November 30, 2017. Likewise, Plaintiffs allege that the charges against Hutton-Lattimore were "dropped in a manner indicative of her innocence" on January 6, 2016, yet she did not bring her claims until November 30, 2017. In sum, both Lattimore's and Hutton-Lattimore's state law malicious prosecution claims are time-barred under Section 8-101(a) of the Illinois Tort Immunity Act.

In response, Plaintiffs argue that their malicious prosecution claim is timely based on the doctrine of equitable tolling. Plaintiffs specifically maintain that even after the proceedings were

3

terminated in their favor, "Lattimore was still going through the legal process to reclaim his unjustly confiscated property and to clear his name." (R. 34, Resp., at 4.) Further, Plaintiffs argue that Hutton-Lattimore's case was "ongoing over a month after Plaintiff Lattimore's case was terminated" and that "both Plaintiffs faced continuing harm because their 'case received news attention.'" (*Id.*)

Equitable tolling is a rare remedy, which should be granted only when claimants have exercised due diligence in preserving their legal rights. *See Wallace v. Kato*, 549 U.S. 384, 396 (2007). More specifically, "[e]quitable tolling applies when a plaintiff, despite the exercise of due diligence and through no fault of his own, cannot determine information essential to bringing a complaint." *Liberty v. City of Chicago*, 860 F.3d 1017, 1019 (7th Cir. 2017). A litigant seeking to assert equitable tolling must establish: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Here, Plaintiffs' explanations for the untimely filing of their state law malicious prosecution claims do not establish that – through no fault of their own – they could not determine the information essential to bringing their claims despite their due diligence. Accordingly, Plaintiffs' state law malicious prosecution claim is time-barred.

### B. Intentional/Negligent Infliction of Emotional Distress

In Count VI, Plaintiffs bring a state law intentional or negligent infliction of emotional distress claim. As above, Defendants argue that this claim is untimely under the one-year limitations period set forth in the Illinois Tort Immunity Act. *See* 745 ILCS 10/8-101(a). In response, Plaintiffs offer no explanation for the tardiness of this claim. As such, Plaintiffs' intentional/negligent infliction of emotional distress claim is untimely. *See Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016) (failing to respond to defendants' arguments amounts to waiver of claims); *Steen v. Myers*, 486 F.3d 1017, 1020-21 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of claim).

## II. Constitutional Claims

### A. Group Pleading

As to Plaintiffs' constitutional claims, Defendants assert that Plaintiffs' "group pleading" fails to adequately allege how each Defendant was personally involved in the alleged constitutional deprivations. To clarify, when bringing constitutional claims under 42 U.S.C. § 1983, individual liability requires personal involvement in the alleged constitutional violation. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010). In other words, under § 1983, an individual is only liable for his or her own misconduct. *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015). Also, a "defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Rasho v. Elyea,* 856 F.3d 469, 478 (7th Cir. 2017) (citation omitted). That being said, "'group pleading' does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Marposs Societa Per Azioni v. Jenoptik Auto. N. Am., LLC*, 262 F.Supp.3d 611, 618 (N.D. Ill. 2017).

4

Here, Plaintiffs' Complaint fails to provide sufficient factual detail under the federal pleading standards. *See Iqbal*, 556 U.S. at 678 (a complaint is plausible on its face when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). More specifically, Plaintiffs repeatedly allege that the "Responding Officers" or the "Defendant Officers" took certain actions, yet there are five individuals identified as "Responding Officers" and eight individual "Defendant Officers." Although Plaintiffs specifically allege that Defendant Officer Klein made false statements and fabricated evidence, they fail to identify what the other Defendant Officers did or did not do in relation to their constitutional claims. Thus, viewed in their favor, Plaintiffs' allegations fall short of stating plausible claims for relief against Defendant Officers. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). The Court therefore grants Defendants' Rule 12(b)(6) motion without prejudice and grants Plaintiffs leave to file an Amended Complaint.

### B. Defendant Officer Wojtowicz

Likewise, Defendants move to dismiss Defendant Officer Wojtowicz from this lawsuit because Plaintiffs merely identify him in the caption and include him in one paragraph of their Complaint stating:

> At all times relevant to this action, the named Defendant Officers Klein, Steinmetz, Wojtowicz, Stoiber, Van Der Linden, McPherson, Gallagher, Barnes, and Zeigler were duly appointed police officers of the Defendant, Village of Streamwood, and at all relevant times were acting under color of state law, within their scope of employment and in their individual capacities. They are being sued in their individual capacities.

(Compl. ¶ 5.)

Indeed, Plaintiffs must do more than name Defendant Officer Wojtowicz in the caption and state that he is a police officer to adequately allege claims against him. *See Catinella v. Cnty. of Cook, Illinois*, 881 F.3d 514, 517 (7th Cir. 2018) (allegations must provide enough factual details to "present a story that holds together"); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). The Court therefore grants Defendants' motion in this respect without prejudice granting Plaintiffs leave to file an Amended Complaint in order to add sufficient factual details to their allegations.

### C. Fourth Amendment Malicious Prosecution Claim

In Count II of the Complaint, Plaintiffs bring a Fourth Amendment "malicious prosecution" claim. In their motion, Defendants argue that there is no federal claim for malicious prosecution – despite the Supreme Court's decision in *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017). In 2016, the United States Supreme Court granted certiorari in *Manuel v. City of Joliet*, 590 Fed. Appx. 641, 642 (7th Cir. 2015), *cert. granted sub nom. Manuel v. City of*

5

*Joliet, Ill.,* 136 S. Ct. 890 (2016). The Seventh Circuit's decision in *Manuel* involved, in part, the issue of whether the existence of a federal malicious prosecution claim depends on the availability of a state remedy. *Manuel*, 590 Fed. Appx., at 642-43, *rev'd and remanded sub nom. Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) ("*Newsome* held that federal claims of malicious prosecution are founded on the right to due process, not the Fourth Amendment, and thus there is no malicious prosecution claim under federal law if, as here, state law provides a similar cause of action."); *see also Newsome v. McCabe,* 256 F.3d 747, 750 (7th Cir. 2001) ("existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution"), *abrogated by Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017). In *Manuel*, the Supreme Court held that the Fourth Amendment "governs a claim for unlawful pretrial detention even beyond the start of legal process," which "can occur when legal process itself goes wrong – when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id*. at 919-20. The *Manuel* Court, however, did not set forth the specific requirements of this type of Fourth Amendment claim, but instead remanded the case to the Seventh Circuit to consider the contours of any such claim. *Id*. at 922. To date, the Seventh Circuit has yet to issue a ruling on remand thus the Seventh Circuit has not decided whether there is a free-standing constitutional tort of malicious prosecution.

Thus, without the benefit of the Seventh Circuit's ruling on remand, courts in this district have looked to other circuits that have recognized Fourth Amendment federal malicious prosecution claims for guidance. *See Pitt v. D.C.,* 491 F.3d 494, 510 (D.C. Cir. 2007) ("nearly every other Circuit has held that malicious prosecution is actionable under the Fourth Amendment to the extent that the defendant's actions cause the plaintiff to be 'seized' without probable cause."). The First Circuit, for example, has set forth the following elements: "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013) (quoting *Evans v. Chalmers*, 703 F.3d 636, (4th Cir. 2012)); *see also Swartz v. Insogna,* 704 F.3d 105, 111 (2d Cir. 2013); *see, e.g., Powell v. City of Chicago*, No. 17-CV-5156, 2018 WL 1211576, at *5 (N.D. Ill. Mar. 8, 2018).

At present, however, Plaintiffs may not bring a federal malicious prosecution claim, therefore, the Court denies this aspect of Defendants' Rule 12(b)(6) motion.[1] Once the Seventh Circuit issues its ruling in *Manuel*, the Court will revisit this issue.

**Dated:** May 11, 2018

**AMY J. ST. EVE**
**United States District Court Judge**

---

[1] Because the plaintiff in the Court's earlier ruling – *Kuri v. City of Chicago*, No. 13 C 1653, 2017 WL 4882338, at *7 (N.D. Ill. Oct. 30, 2017) – brought both state and federal malicious prosecution claims, the Court did not address the conundrum district courts face in anticipation of the Seventh Circuit's *Manuel* decision on remand.