**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOI
EASTERN DIVISION**

| | |
|---|---|
| KERMIT LATTIMORE and <br> CAROL G. HUTTON-LATTIMORE, <br>              Plaintiffs, <br> vs. <br> OFFICERS KLEIN #4983, <br> STEINMETZ #8123, <br> WOJTOWICZ #9506, <br> STOIBER #8173, <br> VAN DER LINDEN #8959, <br> MCPHERSON #5634, <br> GALLAGHER # 3408, <br> BARNES, <br> ZEIGLER #9878, and <br> THE VILLAGE OF STREAMWOOD, <br>              Defendants. | Case No. 17-CV-8683 <br><br> Judge John J. Tharp, Jr. |

## ORDER

For the reasons set forth in the statement below, the defendants' motion to dismiss the plaintiffs' amended complaint [57] is granted in part and denied in part. A status hearing will be held on March 20, 2019 at 9:00 a.m.

## STATEMENT

     The original complaint in this case was dismissed, largely without prejudice, by Judge St. Eve on May 11, 2018. Order, ECF No. 37. Shortly thereafter, it was reassigned to this Court's calendar due to Judge St. Eve's appointment to the Court of Appeals. Familiarity with the original complaint and Judge St. Eve's dismissal order are assumed, but as relevant here, Judge St. Eve dismissed the plaintiff's federal claims pursuant to Rule 12(b)(6), agreeing with the defendants that the allegations failed adequately to allege the individual participation of the defendants in the constitutional violations alleged. To be clear, however, and contrary to the defendants' characterization, the dismissal was not on account of "group pleading" by the plaintiff; to the contrary, the dismissal order acknowledged that "group pleading" is not improper per se. Order, ECF No. 37, at 4 ("group pleading does not violate Fed. R. Civ. P. 8 so long as the complaint provides sufficient detail to put the defendants on notice of the claims") (internal quotation marks omitted). Complaints must provide constitutionally minimal notice to each defendant as to the nature of the claim(s) asserted; doing so does not require a pleading that catalogs every individual

act taken by an individual defendant in the course of an incident that involves multiple officers. Alleging that "the Defendants" or "the Responding Officers" all participated in unlawful conduct may, if plausible, suffice to provide adequate notice.

In response to Judge St. Eve's ruling, the plaintiffs filed an Amended Complaint ("AC"). ECF No. 42. In the AC, however, they have done little to address the lack of detail that prompted dismissal of the plaintiffs' federal claims. Here, verbatim, are the fact allegations as stated by Judge St. Eve in ruling that the complaint failed to provide sufficient notice to the defendants:

> Plaintiff Kermit Lattimore ("Lattimore") and Maribeth Rivera ("Rivera") were married and began living together at their Streamwood residence ("Residence"), which was a pre-marital asset owned by Lattimore. Plaintiff Carol G. Hutton-Lattimore("Hutton-Lattimore") is Lattimore's daughter, who lived at the Residence. Eventually Lattimore's and Rivera's marriage became troubled resulting in Lattimore filing a petition for dissolution of the union. On January 26, 2015, Lattimore returned to the Residence with his nephew Steven and Hutton-Lattimore. Plaintiffs allege that at that time Rivera had locked Lattimore out of the Residence. Once they gained entry into the Residence, Rivera's son, Michael, assaulted Lattimore with a knife. Thereafter, Lattimore dialed 911 to request police assistance. Defendant Officers Steinmetz and Van Der Linden responded to the 911 call, knowing that Lattimore had made the call and was seeking assistance. Plaintiffs further allege that Defendant Officers Steinmetz and Van Der Linden had heard the recorded 911 audio of Michael threatening Lattimore.
>
> Shortly thereafter, Defendant Officers Stoiber, McPherson, and Klein arrived to assist Defendant Officers Steinmetz and Van Der Linden at the Residence. Defendant Officers Steinmetz, Van Der Linden, Stoiber, McPherson, and Klein (the "Responding Officers") entered the Residence and interviewed the occupants therein. According to Plaintiffs, the Responding Officers knew the occupants at the Residence and had no authority to remove Lattimore, his nephew Steven, or Hutton-Lattimore from the Residence. As to Hutton-Lattimore, the Responding Officers found her in the kitchen on January 26, 2015, and knew that at that time knew she had not committed a crime and that she was not a threat to the occupants of the Residence. Nonetheless, on January 28, 2015, Streamwood police officers arrested Hutton-Lattimore and charged her with home invasion.
>
> As to Lattimore, once the Responding Officers arrived on January 26, 2015, they seized Lattimore's lawfully owned gun and escorted him out of the Residence. Once outside the Residence, the Responding Officers searched Lattimore's car to recover his wallet and then towed the vehicle. The Responding Officers thereafter arrested Lattimore and charged him with unlawful use/possession of a weapon and home invasion despite Lattimore's valid firearm credentials and documents. Plaintiffs further allege that Defendant Officer Klein submitted a complaint for a search warrant to search Lattimore's property that stated Lattimore's concealed carry license and FOID cards had been revoked – although they were in fact valid. Moreover, Plaintiffs allege that Defendant Officers Gallagher, Barnes, and Zeigler assisted in the arrest, as well as investigated the home invasion charges against

Lattimore and Hutton-Lattimore. On December 2, 2015, after a jury trial, the jury acquitted Lattimore of the home invasion charges. Lattimore's unlawful use of a weapon charges had been dropped before trial. The charges against Hutton-Lattimore were dropped on January 6, 2016.

In response to the dismissal order, the plaintiffs have essentially repeated their prior fact allegations and added a handful of new allegations, most pertaining only to Officer Wojtowicz. Here are the new allegations in the Amended Complaint:

- ¶ 31: Officer Wojtowicz was assigned to investigate the January 26, 2015 incident;

- ¶ 32: Officers Wojtowicz and Gallagher were the officers who charged or arrested, or assisted in charging or arresting, Hutton-Lattimore;

- ¶ 33: Officer Wojtowicz served an emergency order of protection on Lattimore on January 29, 2015 in bond court;

- ¶¶ 34-35: Rivera signed over Lattimore's personal property to Officer Wojtowicz;

- ¶ 36: Officer Wojtowicz discovered on February 3, 2015 that records at the school attended by Lattimore's and Rivera's son listed Lattimore's address as 1 Heather Court;

- ¶ 37: On or around March 3, 2015, Wojtowicz falsely claimed that Lattimore did not have an Order of Protection which prevented persons other than Rivera and her son from being present at the 1 Heather Court residence; and

- ¶ 50: Hutton-Lattimore's records were expunged on or around January 11, 2017.

While these new allegations remedy the complete dearth of allegations about Officer Wojtowicz in the original complaint, they do little to cure the deficiencies of the original complaint with respect to the allegations against the other defendant officers. That does not mean, however, that the entire complaint should be dismissed. While Judge St. Eve did not find it necessary, given the grant of leave to replead, to parse through the adequacy of the allegations as to each defendant, in reviewing the plaintiffs' allegations, the Court concludes that they suffice to state plausible claims against various subsets of the defendants, as discussed in detail below.

In Count I, the plaintiffs assert claims based on alleged violations of their Fourth Amendment rights. Lattimore alleges that he was subjected to an unlawful search based on a search warrant procured with false statements,[1] that he was arrested without probable cause, and that his

---

[1] It is not entirely clear from the allegations of the AC for what premises or location the warrant authorized a search, but it appears that the warrant was obtained to permit a search of Lattimore's car for firearms. See Compl. ¶ 77 (referring to statements made in the complaint for search warrant to search Lattimore's Pontiac and seize his firearms). Further, the AC does not include allegations suggesting that the officers' presence inside the house was unauthorized or

property—specifically two firearms, unspecified property turned over to police by Rivera, and his car—were unlawfully seized. Hutton-Lattimore asserts that she was unlawfully searched and arrested, but the complaint includes no fact allegations relating to a search of Hutton-Lattimore or her property, so the Court construes her claim to be for unlawful arrest only. These are all cognizable Fourth Amendment claims.

With respect to the search of Lattimore's car, the AC alleges that Officer Klein procured the search warrant by falsely stating in the warrant application that Lattimore's concealed carry license and FOID card had been revoked. It does not allege, however, that any other defendant was involved in procuring the warrant or even knew that a warrant had been obtained, much less that they knew that the warrant application included false statements. Rather, the AC includes a conclusory allegation that all of "the Defendant Officers" caused the illegal search and seizure, but (as Judge St. Eve previously ruled) that statement is not adequate to provide notice as to what role each officer played with respect to the search and seizure of Lattimore's vehicle. Moreover, since the AC alleges that only five of the defendants comprise "the Responding Officers," the implication is that not all of the defendants (*i.e.,* those who did not respond to the January 26 scene) participated in, or were even aware of, the search and seizure of Lattimore's car on that date.[2] Accordingly, the only defendant that the AC adequately alleges bears responsibility for the search and seizure of the car and the firearm it allegedly contained, is Officer Klein. The AC fails to state a claim for relief based on an unlawful search of the car against any other defendant.

By contrast, however, the AC adequately alleges the participation of "the Responding Officers" in Lattimore's arrest. It alleges that each of those officers participated in interviews of the occupants of the house, knew that the plaintiffs lived in the Residence and that Rivera and her son had no right to exclude Lattimore from the Residence, and knew that Lattimore was lawfully armed, but Lattimore was nevertheless arrested. Thus, in contrast to the allegations about the search and seizure, which do not plausibly allege the involvement of even all of the Responding Officers, with respect to Lattimore's arrest, it is reasonable to infer that each of the discrete group of Responding Officers participated, or at a minimum, acquiesced, in Lattimore's arrest for home invasion and unlawful use of a weapon knowing that there was not probable cause to believe that he had committed either crime.

As to the arrest of Hutton-Lattimore, the AC concedes that she was not arrested nor charged with committing any crime on January 26, 2015. It alleges that Officer Wojtowicz was assigned the next day to investigate the events of January 26 and that the following day, January 28, he arrested, or assisted in the arrest of, Hutton-Lattimore. It also alleges that Officers Gallagher,

---

unlawful. Accordingly, the Court construes the allegations of a search of Lattimore's property to relate to a search of his vehicle.

[2] Further, only Officer Wojtowicz is alleged to have seized other personal property of Lattimore's that Rivera gathered up and delivered to the police. AC ¶ 61. The AC alleges that Wojtowicz improperly relied on consent from Rivera, whom he knew had no authority over Lattimore's property. The allegations of the AC are not clear as to who—Rivera or Wojtowicz—initiated the collection of Lattimore's property (which matters; if Rivera acted on her own initiative, there would be no Fourth Amendment violation), but at this stage Lattimore is entitled to all reasonable inferences.

Barnes and Zeigler also assisted in the "arrest, processing and investigation" of the home invasion charges against both Lattimore and Hutton-Lattimore. But none of these officers are alleged to have been among the group of "Responding Officers" on January 26 and other than Wojtowicz, none are alleged to have been aware of the circumstances that, the plaintiffs allege, made it patent to the Responding Officers that the plaintiffs were not committing a home invasion. The allegations of the participation of Officers Gallagher, Barnes, and Zeigler therefore fail to plausibly allege that they participated in, or could have prevented, the allegedly unlawful arrests of the plaintiffs. Wojtowicz, however, is alleged to have sworn out a false criminal complaint against both plaintiffs, AC ¶ 58, so the AC adequately identifies his personal participation in the plaintiffs' arrests.[3]

In Count II, the plaintiffs attempt to set forth a Fourth Amendment claim based on "malicious prosecution." The gist of this claim is that the defendants initiated and pursued criminal charges against the defendants based on false statements and reports created in connection with the events of January 26, 2015. As the Supreme Court and Seventh Circuit have now made clear, however, there is no such thing as a "Fourth Amendment malicious prosecution" claim. Rather, to the extent that the plaintiffs allege that they were detained in custody based on fabricated evidence—and they do—they have a Fourth Amendment claim for a seizure unsupported by probable cause, not a "malicious prosecution" claim. *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) (*Manuel I*); *Lewis v. City of Chicago*, 914 F.3d 472 (7th Cir. 2019). The plaintiffs allege that they were both "transported to jail and were wrongfully incarcerated," ¶ 45, presumably on the days they were arrested, and they supplement that allegation in their brief, noting that the plaintiffs were held in custody until they bonded out, Lattimore on February 13, 2015, and Hutton-Lattimore on February 4, 2015.

Those are the dates on which the statute of limitations for the plaintiffs' Fourth Amendment claims for unlawful seizure of their persons began to run. *Manuel v. City of Joliet*, 903 F.3d 667, 669 (7th Cir. 2018) (*Manuel II*) ("We hold that Manuel's claim accrued on May 5, when he was released from custody."). As the plaintiffs concede, the applicable limitations period is two years; their Fourth Amendment personal seizure claims were therefore untimely after February 13, 2017 (Lattimore) and February 4, 2017) (Hutton-Lattimore), respectively. The original complaint in this case was not filed until November 30, 2017, however, so the plaintiffs' Fourth Amendment seizure claims set forth in Count II are time-barred.[4]

---

[3] The defendants' argument for qualified immunity is undeveloped and therefore forfeited for purposes of this motion. The defendants devote but a single sentence in their opening brief to explaining why they are entitled to qualified immunity and that sentence is entirely conclusory ("no facts that the [defendants'] conduct was so egregious that no reasonable person could have believed that it would not violate clearly established rights"). In their reply brief, they discuss one case, *White v. City of Markham*, 310 F3d 989 (7th Cir. 2002), but arguments not raised in an opening brief are deemed forfeited. *See United States v. Boyle*, 484 F.3d 943, 946 (7th Cir.2007). In any event, *White* does not hold that there is a clearly established right to arrest for home invasion without probable cause or to search and seize a vehicle based on a warrant obtained through the knowing use of false statements, as is alleged here.

[4] The same would seem to be true of the Fourth Amendment claims set forth in Count I, but the defendants have not argued that those claims are time-barred.

The plaintiffs attempt to salvage their "malicious prosecution" theory by asserting that notwithstanding *Manuel I*, *Manuel II*, and *Lewis*, they have a timely claim based on fabrication of evidence because the "wrong" caused by the allegedly fabricated evidence continued until the charges against them were dismissed. In other words, they maintain that they have a due process claim based on the fabrication of evidence based not on their unlawful detentions but because they were wrongfully charged. That argument fails, however. As the Seventh Circuit has repeatedly explained, "there is no such thing as a constitutional right not to be prosecuted without probable cause." *Manuel II*, 903 F.3d at 670 (quoting *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013)). Absent a deprivation of liberty (which, per *Manuel I*, would be actionable only under the Fourth Amendment), there can be no due process deprivation caused by the use of fabricated evidence.

Perhaps the Circuit's clearest explanation of the point can be found in Judge Sykes' opinion for the court in *Bianchi v. McQueen*:

> [A]n act of evidence fabrication doesn't implicate due-process rights *unless* the fabricated evidence is later used to deprive the [criminal] defendant of her liberty in some way. A deprivation of liberty is a necessary element of a due-process claim premised on allegations of evidence fabrication.
>
> [Defendants] suffered no deprivation of liberty; they were acquitted at trial. That brings this case squarely within the holding of *Saunders–El v. Rohde,* 778 F.3d 556 (7th Cir.2015). Our decision in *Saunders–El* reiterated that "[n]ot every act of evidence fabrication offends one's due process rights." *Id.* at 560. To explain, we pointed to the recent case of *Alexander v. McKinney,* 692 F.3d 553 (7th Cir.2012). *Alexander* involved an evidence-fabrication claim by a plaintiff who was arrested, immediately released on bond, and found not guilty at trial. *Id.* at 555–57. Following his acquittal, he sued the prosecutor and investigators, alleging that they conspired "to manufacture false evidence and bring trumped-up charges" in violation of his right to due process. *Id.* at 554. We held in *Alexander* that the plaintiff's acquittal foreclosed any due-process claim. *See id.* at 557. Indeed, we said "[i]t would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of trial is to *effectuate* due process." *Id.* at 557 n. 2.
>
> The same result followed in *Saunders–El.* We held that because "Saunders–El [was] released on bond following his arrest and acquitted at trial, [his case] falls squarely within our holding in *Alexander,* and ... [he] cannot make out an evidence fabrication-based due process violation." 778 F.3d at 561. We explained that "due process is not implicated when, as here, the defendant is released on bond following his arrest and acquitted at trial." *Id.* at 558.
>
> *Saunders–El* and *Alexander* foreclose the evidence-fabrication claim alleged in this case. Because the plaintiffs suffered no liberty deprivation, they suffered no due-process violation.

*Id.*, 818 F.3d 309, 319–20 (7th Cir. 2016) (some citations and internal punctuation omitted). As Judge Sykes' exegesis makes plain, the plaintiffs' have no cause of action under the Due Process Clause based on a theory that their prosecution was wrongful because it was premised on fabricated evidence. The plaintiffs were deprived of their liberty for a period, but that claim is time-barred. They were not deprived of an opportunity to contest the charges against them, however, and they prevailed. That does not make out a claim for denial of due process. Accordingly, the plaintiffs cannot proceed on either a Fourth Amendment of Due Process theory as to the charges brought against them against them.

In Count III, Lattimore purports to assert a due process violation arising from the deprivation of property he suffered. As such, this count merely attempts to set forth another theory of recovery for the government's seizure of property in violation of the Fourth Amendment. The right to be vindicated is the right to be free from unreasonable seizures of property and, consistent with the rationale of *Manuel I*, it is in the Fourth Amendment rather than the Fourteenth Amendment that the claim should be grounded.

In Count IV, the plaintiffs also invoke the Fourteenth Amendment as ground for a claim based on their unlawful eviction from the Residence on January 26, 2015. The AC alleges that the defendants conspired to, and did, deprive "Plaintiffs of their lawful Residence and personal property without a Court order with notice to the Plaintiffs, a hearing, or any other process that Plaintiffs would otherwise been afforded by law when being evicted from a residence . . . ." AC ¶ 91. That sounds like a seizure of the residence, or a seizure of Lattimore,[5] and as such would be actionable, if at all, under the Fourth Amendment. Circuit law is clear, however, that the failure of state actors to comply with the state eviction procedures does not, in itself, violate the Fourth Amendment. *See*, *e.g.*, *Hurem v. Tavares*, 793 F.3d 742, 746-47 (7th Cir 2015) (the remedy for a violation of state law that imposes requirements beyond those of the Fourth Amendment lies in state court); *Gordon v. Degelmann*, 29 F.3d 295, 301 (7th Cir. 1994) ("failure to afford a hearing required by state law, but not by the fourth amendment, violates only that state law"). But the defendants do not argue that a wrongful eviction under state law cannot give rise to a constitutional claim for deprivation of due process, however, so there is no need for this Court to consider whether in this context the Due Process Clause provides an alternative to a Fourth Amendment claim.

There is another problem with the plaintiffs' due process claim, however. As the defendants argue, it is untimely. The putative eviction occurred on January 26, 2015, and as the statute of limitations for § 1983 actions in Illinois is two years, a claim based on the wrongful eviction was time-barred by January 26, 2017. The original complaint was filed in this case on November 30, 2017, some eleven months too late. The plaintiffs contend that their eviction claim did not accrue until their rights to exclusive possession of the Residence were restored in state court in April 2016 as the result of a civil proceeding, but that date is, as the defendants observe, irrelevant. A § 1983 claim generally accrues "when the plaintiff knows or has reason to know of the injury that is the

---

[5] As for Hutton-Lattimore, who was not arrested on January 26, 2015, there is no express allegation in the AC that she was compelled by any defendant to leave the residence on that date, so as currently pled, there seems to be no basis for her to maintain a claim that she was evicted by any defendant.

basis of his action." *Wallace v. Kato*, 549 U.S. 384, 391 (2007) ("Under the traditional rule of accrual ... the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable.") (quoting 1 C. CORMAN, LIMITATION OF ACTIONS § 7.4.1, pp. 526–527 (1991) (footnote omitted)). That was, as the defendants assert, the day of the putative eviction; at that point, the plaintiffs knew that they were being deprived of their right to remain in the Residence and so knew that they were being injured by the conduct of the responsible defendants. The acts giving rise to the eviction claim were complete as of that date (or perhaps by the time that the plaintiffs were released from custody a few weeks later, if the basis of the unlawful eviction claim is the Fourth Amendment); that the injury arising from the allegedly unlawful eviction continued does not toll the limitations period. *McCormick v. Indep. Life & Annuity Co.*, 794 F.3d 817, 820 (7th Cir. 2015) ("[O]ngoing injury . . . differs from a new claim. New injury from an old wrong does not affect the period of limitations.").

The plaintiffs invoke the claim accrual rule of *Heck v. Humphrey*, 512 U.S. 477 (1992), in hopes of preserving the timeliness of their claim. That rule holds that a § 1983 claim that would imply the invalidity of a criminal conviction "does not accrue until the conviction or sentence has been invalidated." *Id.* at 489-90. *Heck* rested on the common law precept "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding ***criminal*** judgments." *Id.* at 486 (emphasis added). The plaintiffs do not argue that prevailing on their § 1983 claim for unlawful eviction would have undermined a conviction in their criminal cases (neither was convicted), but rather that it could have been inconsistent with the state court judgment in a civil proceeding they pursued to regain exclusive possession of the Residence. They cite no authority for extending the domain of the Heck accrual rule to civil litigation, however, and the Court is aware of none. Further, and in any event, a conviction on the home invasion and weapons charges would not necessarily be inconsistent with Lattimore's claim that he was arrested on January 26, 2015 without probable cause. *See*, *e.g.*, *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007); *Manuel II*, 903 F.3d at 669) (pre-custody events like arrest can be litigated without awaiting vindication on criminal charges "because they do not deny the validity of any ensuing custody"). Accordingly, even if the *Heck* accrual rule could apply in the context of a § 1983 claim that would imply the invalidity of a state court civil judgment, it would not apply here. The plaintiffs' unlawful eviction claim is time-barred.

To sum up, then, it appears that all of the plaintiffs' claims are time-barred, but the defendants have forfeited, on this motion, a limitations argument as to the claims asserted in Count I. As to those claims:

- Lattimore's claim that his vehicle was unlawfully searched, and that the car and the firearm inside it were unlawfully seized, survives as to Officer Klein only;

- Lattimore's claim that he was arrested unlawfully on January 26, 2015 survives as to the "Responding Officers" only (Steinmetz, Van Der Linden, Stoiber, McPherson, and Klein); and

- Lattimore-Hutton's claim that she was falsely arrested on January 28, 2015 survives only as to Officer Wojtowicz.

The dismissal of the time-barred claims is with prejudice. Ordinarily, the Court would be inclined to permit further amendment of the surviving claims to the extent that additional evidence pertaining to the involvement of other Officers may be obtained in discovery. In this case, however, further amendment may be futile because even the surviving claims appear to be time-barred. A status hearing will be held on March 20, 2019 at 9:00 a.m. to discuss this issue further.

Date: March 4, 2019

_____
John J. Tharp, Jr.
United States District Judge